All rise. This is going to tell the court that this is a town session. The Honorable Justice of the United States of America is going to decide. Good afternoon, everyone. Please be seated. The clerk will call the case. Case 10-22, 07-88, Maya Patton v. Frank Coccaro. Please proceed. Thank you, Ms. Esposito. At this time, we're going to ask the lawyers who are here to argue today to please step up to the podium and just briefly introduce themselves. Good afternoon, Your Honor. I'm Scott Howey. I represent the defendant, Abba Lance, Dr. Brian Coccaro, and Associated St. James Radiologists. Hi, good afternoon. My name is Evette Loison. I'm here for the plaintiff. Good afternoon, Your Honor. I'm Mike Bragan, and I'm also here for the plaintiff. And the order, which the court nicely entered, said that we are to tell you what our plan is for splitting the argument. And thank you for the additional time. We are going to split it 15 minutes apiece. I'm going to be talking about the new trial issues exclusively, and Ms. Loison is going to be talking about the pre-judgment interest issues exclusively. And if I happen to run over, she and I are agreed not to be mad, and I may come up short. All right. Get the name of the attorney arguing the constitutional issues, and I'm not sure if you're on any of the briefs. I'm not, Your Honor. Let's get your name spelled very loudly and clearly, please. Sure. It's Evette, Y-V-E-T-T-E. Last name is Loison, L-O-I-Z as in zebra, O-N. Loison. All right. Very good. Thank you. Now I've got you. All right. You know about the division of time. We tend to ask a lot of questions. Please remember we have read the briefs and are familiar with the records, so we don't need to have that repeated. We will try to be somewhat generous with our time if we feel we need it for a full elucidation of the facts of this case. We also welcome our – we have a whole squadron of law students from various summer externship programs here today. So they're all, you know, here to audition for you. With that, Mr. Howell, you may proceed when ready. Thank you. May it please the court. Again, I'm Scott Howell and I represent the defendants at the lance in this matter. Dr. Greg Cuccaro and Associated St. James Radiologists. And it's good to be with you. This case arises from allegations that Dr. Cuccaro was negligent in failing to detect the plaintiff's breast cancer, allegedly delaying her diagnosis and allegedly leading to injuries resulting from a delay in treatment. Two of Dr. Cuccaro's co-defendant physicians who treated the plaintiff after his involvement but failed to recommend appropriate testing settled before trial. And the case was tried against Dr. Cuccaro and his corporation in November of 2021, resulting in a jury verdict against them. In addition to the damages award, the trial court awarded prejudgment interests required by the 2021 amendment to section 2-1303 of the Code of Civil Procedure, the Interest Act, which purports to allow a plaintiff to recover prejudgment interests from either the filing of the action or in this case the effective date of the statute until the date of judgment is entered. This appeal concerns the restrictions placed on Dr. Cuccaro's freedom to fully present his case that his settled former co-defendants were to blame for any delay in the plaintiff's diagnosis. It also concerns the constitutional validity of the prejudgment interest statute. With respect to the question of the issues that relate to the motion for a new trial, the defendants are entitled to a new trial on the basis of trial errors and the exclusion of evidence. An accumulation of rulings that together unfairly hindered the defendants in setting forth their contention that the clinicians, Dr. Mitchell and Dr. Kanzler, who were the ultimate responsibility, were wholly responsible for injuries resulting from the plaintiff's delayed diagnosis. And this takes the form of several independent rulings, all of which combined to have a prejudicial effect. What evidence was excluded on this point of this restriction related to wholly responsible? What was it that was kept out? The argument does not depend on the exclusion of evidence, Your Honor. This is really in relation to the stone cold of the arguments that we raise as cumulative error. The jury instructions, the debacle over those. I understand this question, but this is the first issue, wholly responsible. What evidence or argument did the trial court not allow? That's a ruling that we maintain set atone. And that it had the effect of influencing the issues as to the jury instructions, that less emphasis was given to the importance of establishing what the jury instructions were to be, what the proper instructions and the valid instructions were to be. That it affected the court's denial of the special interrogatory. It would have tested the juror's understanding of the instructions, especially important given that... Well, let me ask you about the special interrogatory. And you cite eight cases in your opening brief on special interrogatory, saying that a special interrogatory must be given. A trial judge has no discretion to refuse that if it's in proper form. The problem is that that's no longer the law. It hasn't been the law for years, and there is no embellishment in your reply brief, yes? That is correct, Your Honor. But we maintain that the discretion is still used in this case. But how could you maintain it when you didn't argue it in your opening brief? So now it's not what you argued in the opening brief? That is true, Your Honor. But the question of discretion and whether discretion was abused remains in a general sense an issue before this court, and whether the court was required to give that is not the issue. I concede that. But whether the court should have given that instruction and whether it was an abuse of discretion not to give that, pardon me, that special interrogatory, forgive me, that's the issue that the court should be addressing. That is part and parcel of the entire cumulative error, and especially relative and in conjunction with the confusion and chaos over the jury instructions concerning sole proximate cause. Would you characterize, Mr. Howley, sort of the tone of the trial? Because the strategy at trial was to point fingers at the first two doctors who were settled out. Do I read that correctly? That's correct, Your Honor. And would you, I don't think it was you, but whoever was the trial attorney, was allowed to argue to the jury, was he not, that, or she, I forget which, that in fact the proximate cause of the injuries to the plaintiff were the actions of the first two doctors as opposed to this doctor. Wasn't that part of the argument? He was permitted to make a general argument. But with respect to, and this is again a part of the, and we were top stashing around a bit amongst the various portions, but it is cumulative error, so I think that's fit. And part of the closing argument, the part that was barred on the plaintiff's motion was the ability of the defense counsel, his ability, to say that this was, that the evidence that the clinicians were responsible was unrebuttable. Your position is that the first two were the sole proximate cause, if any? That's correct. But they were able to argue that they only heard from one expert, right? I believe that's correct, Your Honor. But they were not able to argue, they were barred from arguing that the evidence of the clinician's negligence was unrebuttable. So kind of the other half of that term, you only heard from one expert that gave you this testimony. Correct. Versus being able to say the testimony was unrebuttable. That's correct. And only talking about, the defense's own expert talking about the negligence and not able to point out the absence of evidence. And the reason why the evidence was, the expert testimony was unrebuttable had to do with the barring order that Judge Waller had entered. That's correct. So rather than misleading the jury into thinking they couldn't get an expert, doesn't it seem a reasonable exercise of the trial court's discretion to say, yeah, don't say unrebuttable, but you can say, quote, find this expert's degree, and things of that nature. No, Your Honor, especially that would not be enough. What is it that was excluded that was so unfairly prejudicial that we have to reverse a jury verdict? Is it simply the word unrebutted? If you didn't get to use the word unrebutted, we're going to reverse a jury verdict. Not strictly on that alone, Your Honor. We are talking about cumulative error. But with respect to the closing argument, the inability, and no, it's not specifically the word unrebutted, because that, as I understand it, was not the ruling. The ruling was that the defense counsel could not observe to the jury that the evidence was unrebutted. And it's not significant, you're correct, the reason that there was no expert to testify was because the expert was barred. And that is not what the defense counsel wished to argue or would have argued. Defense counsels wish only to argue, and ask the judge for the permission, to argue simply that there was no expert to say otherwise. And that's especially important when arguing to a jury about something, not about what the evidence was, but what the evidence was. To tell the jury what it didn't hear. It's easy enough to assume or presume that the jury will remember the things it heard, maybe some of them wrote them down in their notes, but it's less reliable to think that the jury will notice things that aren't there. And that's the purpose of the oral arguments, of the closing arguments, is to point out and emphasize those things, whether they're there or whether they are missing, that will underscore and emphasize the strengths and weaknesses, the strengths of one's own case and the weaknesses of the other. It isn't necessary in this situation for defense counsel to tell the jury why the expert was barred. What's significant is simply the fact that there wasn't an expert there to defend the actions of the former co-defendants, the sole coxswain causes in the defense arguments. So when pressed, the judge said, any argument that's properly based on the evidence in the record, including that issue of sole coxswain cause, will be allowed. If the evidence was there to be argued, the judge is going to allow them to argue that, right? That's what the judge said, yes. But that is denied by the barring of the ability to point out this missing part of the plaintiff's case, or of the plaintiff's defense against the sole coxswain cause defense. A full and fair and completely zealous advocate would be able to tell the jury what it didn't hear. But doesn't it matter why the jury's not hearing it? The jury's not hearing it because there's no expert in the world that will come in and testify against this. They're hearing it because a trial judgment, a pretrial ruling, for some reason, barred it. Isn't there a distinction? And to simply allow the jury to hear, I don't know what, would risk misleading them. As to why the testimony's not rebutted? It would not, Your Honor. Because the significance really is just that it's not there. Now the jury can also be instructed, and I believe they were in this case, not to speculate about the reasons for rulings. And that is an adequate instruction to foresaw that sort of misinterpretation or misunderstanding. And the purpose of the argument is not to tell the jury that there is no expert in the world that would say this. It's simply to say that you didn't hear this. That there wasn't an expert to tell you that. And whether that's because no expert would say so, or no expert could be found to say so, is unimportant to the simple fact that the jury didn't hear something. And it's that hole in the plaintiff's case, its inability to respond to the sole proximate cause defense, that is significant to that defense, and something that the defense counsel should have been permitted to argue. Mr. Howey, opposing counsel on these issues, opposing counsel argues that many of these issues were forfeited. Do you agree that they were forfeited, or do you believe that there was a forfeiture, and somehow you have an avenue around that? I don't believe there was a forfeiture of these issues. I recognize that there are rulings that seem to suggest that defense counsel did have some opportunity to make some argument as to sole proximate cause. It was not completely forestalled. The reason why the cumulative error aspect is important is that all of these rulings combined in various ways to prevent defense counsel from making a full and fully vigorous presentation of its cause of action. The nuances of being able to say what one wishes and needs to be able to say on behalf of one's client at closing argument are critical. The prior restraints of telling an attorney that he or she can't argue something that is absolutely true and undisputed is the sort of prior restraint that chills the argument in a way that affects the trial in important ways. I want to say a word as well about the jury instructions and the giving of instructions that, as it turns out and as we can now prove, were not actually on the Illinois court's website at the time that they were given. Well, the defense tendered those instructions. That's correct. And at the time they tendered them, they had been with Prahm. True. That is what it now turns out. Well, the defense knew that they were with Prahm because they came out of court to judge those instructions that they were with Prahm. After they had been tendered. And then it was discovered that they had been withdrawn. But then somebody went to the computer in Chambers, and apparently the official website that is the be-all and end-all of what the official Illinois Supreme Court jury instructions, they were still on the website at that point, right? They were there again. They were there again. They had been withdrawn. At that time, that's when the defense discovered they were on a cookie, on the judge's computer. It defaulted to the last time it was on the website. We don't know what was on the website. True. I guess we know what wasn't on the judge's computer at the time of the trial. Correct. Although we recognize that there was legal press at the time in the Chicago Daily Law Bulletin that recognized there had been some hiccups in the posting and withdrawal and the revisions that were made to the instructions were not. If defense counsel knows the withdrawal, and they know they're going through an instruction count, wouldn't they bring that with them, some indication, print it off and say, wouldn't they want to file it? Wouldn't they want to withdraw their own tendered instructions? So, of course, I'm quite certain that defense counsel expected to be able to see this on the judge's computer and fully anticipated that that would be reflected on the Illinois Courts website. I've done a few jury insertion conferences, and I've never had counsel back in chambers to look at the computer. So I don't, that seems a little bit of an unrealistic expectation. I would assume you would bring a former with you to an instruction conference and want a tender to the court. It is a website that is considered to be the be-all, end-all, see-all, how to put it. And certainly that might be best practices, but if it is on the website and shows that it's been withdrawn, that's something that counsel ought to be able to rely on. And the fact that they were not able to in this case certainly is a unique situation. And your Honor, I won't deny that this is, I've never seen anything like this. I feel quite certain most of the court probably hasn't either. It is a very unique situation. The fact that, and I want to emphasize it as well, certainly as your Honor has pointed out, these were instructions tendered by the defense at a time that they believed them to be the current instructions. Upon discovering that they apparently weren't current, they promptly notified the judge. They were unable to determine from the websites in the court's chambers that they had in fact been withdrawn and therefore moved forward with the ones that they had. It is this confusion we maintain that is a basis for reversal because it couldn't be established reliably what the proper instructions were. What were the proper instructions? If, play that out, what did they tender to the court to give the court an alternative? If what is on the website wasn't the correct one, what was given to the court to say, well no, here judge, here's the right one. So again, your Honor, I acknowledge that best practices would have been... Let's just go with what was done. Under the circumstances, they did not tender a different instruction. And in the ordinary case, that would be a waiver. Again, this is a unique situation. It's highly irregular that the be-all, end-all of what provides the jury instructions can't be relied upon or schemed in hindsight to have been two months out of date. I'm confused how you're prejudiced by this because if those two instructions weren't given, the jury would not have received any instruction on sole facts in the court. If that's your theory, if that's what you want to argue as a jury, that's why you tendered those instructions in the first place. You wanted the jury instructions in that long form with that second paragraph. Now it's a prejudicial error to have given them. The error, Your Honor, is in the fact that instructions were given that are now known to have been two months out of date. Were not known to any of the parties at the time. Just because the instruction's been withdrawn doesn't mean that it's legally wrong to give it, right? We give non-IPI instructions. It's not something we, you know, give frequently or lightly. But just because you give an instruction that's not an IPI instruction wouldn't entitle you to a new trial, would it? Under the circumstances of this case, Your Honor, where there was utter confusion as to what the appropriate instruction was, and ultimately the instruction that was given was not the IPI approved, unbeknownst to the parties. Those are circumstances we maintain that make for enough confusion and misunderstanding that that situation is an intolerable one that should call for a new trial. Mr. Howell, you're a little bit over half your time, and I'll let you divide it as you see fit, but I just want to give you a warning in case you want to address the constitutionality at some length. I appreciate that, Your Honor, and I would like to move to the question of prejudgment interest, because should the court disagree that the rulings at trial deny the defendants a full and fair chance to present their defense, it has another issue to address, and that is the constitutional validity of the prejudgment interest statute. The statute runs afoul of the federal and state constitutions for a variety of reasons that are set forth in our appellate briefs, and while I'm happy to address any of the issues those briefs raise and that the court desires, I'd like to begin by focusing on three. First, the intrusion and voting on the right to trial by jury. Second, the violation of the process. And third, the violation of the separation of powers. But before you start going through that bullet point three, let me ask you a global question on this. Are all of your contentions regarding constitutionality based on the federal constitution and the state constitution equally, or is there a nuance involving some state constitutional provision that doesn't apply on the federal side? They apply both equally, Your Honor, if there's not a distinction or arguments apply. In addition to those issues, the retroactive application of the statute to cases not yet accrued or pending when it took effect is an unconstitutional revocation of a vested right and would not be allowable even if the statute itself were constitutional. Turning first to the burden that the statute places on the right to trial by jury, I recognize that the right to a jury trial is a fundamental one. It's a fundamental right of our constitutional democracy. The 1970 constitution was careful to guarantee that the right to trial by jury would remain inviolate. An important part of that right is the right to have a jury determine matters that are in dispute, factual matters, not just liability but also in civil cases questions such as damages and what the amount of damages a successful plaintiff may recover. The right to a jury trial must be judged according to strict scrutiny and must be narrowly tailored to serve a compelling state interest. But the Preventive Interest Statute violates that right by burdening it with a price for its exercise. Defendants who hope to have their day in court may only do so if they are willing to risk being charged a premium. The statute applies equally to bench trials and jury trials. There's nothing unique about the right to have a jury decide those issues or to have the judge decide those issues. The judge in the question of a bench trial gets into questions of separation of powers which are also a significant argument against the statute. But in either case, you can have pre-judgment interest in the state of Illinois in commercial cases for over 100 years, jury trials and bench trials. Commercial cases are a little scared of pre-judgment interest, Your Honor. I don't mean to suggest that you're scared. I have this law. I have this law, Your Honor. But there are constitutional concerns that are raised by the new pre-judgment interest statute that are not part of the statute that is for Illinois. What do some other states do? What do some other states allow pre-judgment interest in? There are states, for example, that provide judges discretion. There isn't a topic that's strictly revoked from the legislature of bench review. They've done it for 100 years in commercial cases and in our sister states, many states provide it. So, the suggestion that it's this gross intrusion is what juries do. It just doesn't really, it's a bit hollow in light of the full context. Given, Your Honor, the fact that many of the statutes in other cases, I'm sorry, in other states provide discretion and allow for the pre-judgment interest only at the judge's discretion, that's a major difference from our case. There are also concerns, certainly, involving the recent passage of this statute. Three readings rule is one of the issues in our case. There is also, however, the question of the removal of a vested right. In commercial cases, as Your Honor pointed out, there has been a pre-judgment interest allowance for years, maybe decades. And so the assessment of that is not a change, but what it illustrates is that interest is a matter of statutory prerogative. A child judge doesn't have any discretion in a money-damaged case to award interest or not. It's just a function of whether or not the statute provides for it, whether it's mandated. And I'm sorry, you're referring to the argument that somehow it encroaches on a judge's discretion to award interest. This is your separation of powers argument. The general assembly has provided for it, or have they not? In cases of personal injury actions, they have. And it's that lack of discretion that infringes on the judicial sphere of powers, the sphere of authority that raises our separation of powers argument. So what's the vested right, Mr. Howey? The vested right in the continuation of the law that says no pretrial interest, or rather, continuation of a situation where pretrial interest didn't exist? It's the vested right in the defense. The mere continuation of the law certainly is not something that someone has a vested right in. But the vested right to a defense, in this case the ironclad defense, or ironclad until 2021, doesn't provide prejudgment interest. It doesn't allow it. It's a vested right at the time that the case was filed, at the time that the allegedly negligent acts were performed. That's something that over the life of the case was a vested right that Dr. Picardo and his corporation had the right to rely upon. And there are multiple cases. In particular, the Lazenby case versus Marks Construction. That's the case in 2010 where the Illinois Supreme Court found that it was unconstitutional to aggregate the fireman's rule, an ironclad defense in certain premises liability cases, that the legislature purported to remove. And the Supreme Court ruled that that was the fireman's rule was a vested right. The defense, the defendant, had a vested right in that defense. And by taking it away, the General Assembly had violated the Constitution. That is essentially what has happened in this case with respect to prejudgment interest. Where up until 2021, any defendant had this case in fact been tried, let's say, in 2020, Dr. Picardo could have responded to a request for prejudgment interest with the unavailable defense that Illinois law doesn't provide that. In fact, Illinois law bars that in cases of this nature. So, to the extent that the prejudgment interest statute imposes that remedy and doesn't allow Dr. Picardo any longer to say that, to assert a defense that the law doesn't allow that, is an unconstitutional revocation of that vested right. Mr. Howley, there's a section of the Illinois Constitution I don't think anybody has cited. I want to read it to you. Article 1, section 12. Every person shall find a certain remedy in the laws for all injuries and wrongs, which he receives to his personal privacy, property, or reputation. He shall obtain justice by law freely, completely, and promptly. Given the time value of money, why doesn't this statute fall under the approval of the Constitution when the Illinois Constitution specifically says that a person who is injured shall receive complete justice? Because that part of the Illinois Constitution refers to compensation, and compensation is something for the jury to decide. To the extent that we're in Faxhinder, in the cases of bench trials, it may be a judge making that decision. The point, though,  the judicial branch, and in jury trials it's the purview of the jury to make a determination of what the plaintiff's injury is worth. Whether the injury is an economic injury, or a non-economic injury, or something that can be reduced to a damages award. Let's take this down. Let's say you have a case where the only thing at issue is medical or special damages. Imaginary case. Time value of money. You're injured in 2015. You get a verdict in 2018 for a million dollars. It's going to be worth a lot more than a million dollar verdict in 2020 because of the time value of money. Correct. And that's part of the jury instruction 30.01 that instructs the jury to consider the duration of the injury. The duration of the injury, but interest does not go to injury. Interest goes to the use of the money. It doesn't depend on what the tort injury is. It's the length of time that it takes the plaintiff to reduce that case to a judgment that's being addressed by the interest situation. Right? That's correct. And the jury doesn't do that. They're not given any instructions on what the prevailing interest rate is. That is the duration of the physical injury. Is it a permanent injury or is it a temporary injury? How long do they have? What basis do we have that that somehow juries are going off and making interest rate calculations based on that? What we have is a host of decisions and commentators from other jurisdictions that speak at length about the jury awarding the prime value of money. Do they make interest calculations? Certainly not. There are three federal appellate court judges. In the world, a federal appellate court judge probably knows about as much about how much  the jury awards. Our whole jury system is predicated on the notion that the jury does only what they're instructed to do. Nothing more and nothing less. They are most certainly not given an instruction to calculate from the time of the injury and the time of the injury. They are given an instruction like that for future damages, but they certainly aren't when they're awarding damages for the principal injury. One of those federal appellate judges was a local Chicago judge. I don't know if he ever says that. But those commentators have recognized that whether the jury is instructed to do that or not, it is something the jury does that they recognize that money has value over time and that they necessarily make awards perhaps not for mathematical interest. They don't put it up on a calculator or according to a prescribed APR, but they nonetheless recognize that money has value over time and that it is incorporated into their determination of damages. As long as it is possible that that has played a role, then the jury has to recognize  has value over time and that it is incorporated into their determination of damages. And the jury has to recognize that money has value over time and that it is incorporated into their determination of damages and that it is incorporated  determination of has value over time  it is incorporated into the jury has to  that   have to         incorporated into their determination of damages they have to recognize that money has value over time and   why we are here today. I will address those first. Before I get there there are a few global points I would like to make to this court. When you read the constitutional provision I will point out a  points. When you read the constitution what was really important was people who have been damaged in some way like the personal injury plaintiff in the case we have before you, the goal is to make sure they are made whole. That is what the constitutional provision says. You should not be considering this under strict scrutiny. You should be applying a rational basis review. Here is why the statute is  It incentivizes defendants and insurance companies to evaluate their cases early in the process within the first year. It incentivizes them to make meaningful and reasonable settlement offers. That is the court and it helps plaintiffs. The practical problem is that a defendant would be in a position to make an intelligent decision one year after case filing as to what is going on. They are still in a   decision one year after case filing. That is a practical matter. That is a problem. I would assert to you that that is what goes on in the daily center. I certainly can't dispute that. However, the legislature is free to make determinations and to pass legislation that they believe will improve the loss of the public. And in this case, the legislature specifically passed this statute for purposes of ensuring that personal injury plaintiffs could get paid earlier. And they intended to incentivize defendants to do what they had to do in their cases to ensure that they could make reasonable rational judgments within the first year. The legislature, according to Illinois law, in passing a statute of this nature, does not have to do it in a way that is absolutely perfect. Should the defendant get to take the plaintiff's deposition in that first year before they make that decision? Regardless of the state of Illinois,  legislature has to make an intelligent decision. And certainly that is the ideal goal, that they would be able to intelligently and adequately value their case. But again, in passing the statute, the legislature can set the bar at what the conduct should be. And in this case, they set the bar of providing a meaningful offer to plaintiffs. And the reason why the legislature did that is very clear, and it is that plaintiffs are frequently left in a position, and particularly in personal injury and tort and medical related cases, they are in a position where they have, and I'm quoting one of the judges out of the 23 that found this statute constitutional, judge set a rule with regard to the physical harm to a person's bodily integrity when talking about the import of this statute to tort and medical death plaintiffs. The reason why the legislature did this is because they understood that those plaintiffs are in a position where they may be severely injured, they may be racking up huge medical bills, they may be unable to go to work, or in wrongful death cases, plaintiffs are in a position where their breadwinner is no longer alive. I'm a victim of a fraud, a financial fraud. You're a victim of Bernie Madoff, and you have no conscience qualifying for prejudgment and interest. Every bit as dire of a  as the personal injury is reduced to a dollar amount. That's what we do. It's the best the system can do in terms of making the tort plaintiff whole. Anything beyond that really matters, doesn't it? I would assert that making the plaintiff whole is certainly a big priority of the legislature. With respect to your specific question with financial related tort theft while the person of low life savings, under Illinois law there have been opportunities for a plaintiff to get prejudgment interest in certain cases that do involve that monetary component. However, I would assert to you that the legislature has the authority to make a determination as to whether a specific societal problem is frankly more important than another one. And in this set of circumstances the legislature made the decision that protecting plaintiffs that are in a position where they may be actually physical and capable of otherwise obtaining funds to live their life, their basic needs in life, needed this kind of protection. And under the law, the legislature is certainly free to prioritize those plaintiffs over others. What would your response to their argument, or to the argument, that prejudgment interest unfairly penalizes defendants for things outside their control? The defendant in a civil case, unlike a criminal case, can't say I demand trial. The defendant might want trial today, but it's not going to happen. The  would have to say that this is not a statute that is at all intended to penalize. In fact, it's intended to incentivize. And the statute is actually replete with mitigating factors that demonstrate to the court that it is not intended to be a penalty. In fact, in addition to mitigating and creating an opportunity for plaintiffs and for judicial efficiency, it also mitigates damage by number one, focusing on the highest written offer.  it's only 6% interest rate compared to the Georgia case. I lost the name of it. We cited it supplementarily and it's against Philip Morris. In that case, Georgia is charging 12% interest and the Georgia court found that that was constitutional. In addition, there's a five-year limit on parole and there's also protection for defendants by ensuring that pre-judgment interest is not going to be affected in situations where punitive damages are not going to be affected. There's still a lot of factors that are outside of the control of the defendant. If the case is still delayed and caused by the plaintiff, the plaintiff is still going to benefit by that interest. By no action of delay by the  there's no way to parse that out and say, well, this part of the case is delayed really on behalf of the plaintiff, so we're not going to assess interest on that part of the case. This year or these months, we're not going to assess interest. It all depends on  plaintiff. I want to assert to you that in crafting this legislation, the legislature doesn't do it in a vacuum. They do it with all of the things that you just articulated to me, and with us as Mitchell mentioned before about what happens in the daily center and how sometimes discovery is   solution. The legislature within their authority made the decision that crafting this legislation was never necessary to resolve a big problem, and that problem is related to plaintiffs being in a position where they are not made whole when there are extensive delays in resolving cases, largely because it is financially beneficial to the defense. It doesn't matter who caused the delay. If in the absence of prejudgment interest, certainly in a commercial case, the defendant effectively has an interest free loan until he has to pay the judgment. So it really doesn't matter who caused the   defense is not making  in the period of delay. That's entirely correct, Your Honor, and I would point out that the longer that it's delayed, the more money the defense is actually making, because they're accruing interest on their own insurance funds. I don't even know the answer to that. But I will say that in the case of  plaintiff, the plaintiffs are frequently taking out high interest loans just to get by, to have a roof over their head and food on the table. So again, I go back to the point that when the legislature made a determination that they were going to pass this statute in order to address that issue, they certainly passed a statute that was rationally related to legitimate public interest. The one judge who found the statute unconstitutional, my former neighbor in a lot of Michigan, a good friend, Judge Merris, was concerned about the idea of double recovery, this notion that juries are already doing this, they're already adjusting their award for the plaintiff, and by adding prejudgment on top of it, you're creating a windfall for a plaintiff. With respect to Judge Merris, I don't think there's any actual basis for that conclusion, and if you recall her basis was the RAND study, which you mentioned several times, which was many, many, many years old, and not at all apropos to current circumstances, and she also relied on a law review article. There was nothing within the confines of the  study, and in passing, Judge Mifflin's comment was an offhanded comment speculating on what juries might do, but Judge Mifflin and, I would assert, again, respectfully Judge Merris both ignored the fact that under Illinois law, which is 100% crystal clear on this point, Illinois juries enjoy a presumption that they are going to follow their jury instructions and that they're going to follow the law, and for them to make those kinds of assessments that you just described and were contemplated by those other judges, we would have to take the leap of rejecting what the Illinois Supreme Court had told us many, many times and believing that they are not following their instructions and that they're back in the jury room with their calculators trying to make an assessment that the law and the jury are  following their instructions      their calculators trying to make an assessment that they are not following their instructions and that they're back in the jury room with their calculators trying to make an  that they are not following their  and that lists that    is, if we are just not believing what the court has said. So this problem has already been determined when prejudgment interest was instituted by way of rule was there a subsequent adjustment to that rule? None of the constitutional challenges that were raised by my opponent before your honor are supported by anything in Illinois law and are not supported by our constitution. For all of those reasons we would ask that you affirm the trial court's judgment not only with respect to prejudgment interest but with respect to all of the issues raised before you on appeal. Thank you. Thank you. Mr. Howie, you may proceed when ready. I may have misstated earlier. You've got ten minutes for your rebuttal. For       Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank    Thank   you. Thank you. Thank you. Thank you. I apologize. It was an inappropriate       believe that it is important to accept and apologize for certain instructions. Mr. Reagan suggests that if we couldn't rely on the best practices under circumstances where the be all end all could be counted on to provide something current, absolutely it would have been necessary to tender an alternate instruction under the circumstances that we had, which were nothing like the ordinary. There was no guide book. There was no play book. There was no precedence as to what to do. And the consequential result was that instructions were given that were not the appropriate ones. And in this instance, yes, your honor, this case is sui generis. I don't expect it to ever come up again. But that leads necessarily to the question of, let's say, we agree with you on that, then what's the difference between the instruction you would have tended and the instruction that was tended? It would have been a different instruction. It would have been 1501. Evidently that is the one that was valid at the time. That's correct. I'm not suggesting that that's a better instruction or a more valid instruction or to defend that instruction instead. It's merely the confusion in this situation.  that situation I don't think the court should be interested in allowing it to happen again. And if anything it might incentivize, to use that to keep the website up to date and appropriate in all instances. With respect to prejudgment interests, I want to speak a little bit about counsel's discussion of what the legislation did and what it had before and what it considered and took into effect. According to counsel's discussion, the legislature understood all these things. It understood that there are plaintiffs who have to take out high interest loans. It understands that there are circumstances where it may be the plaintiffs who are to blame for a delay in the accrual of prejudgment interests. It may understand certain circumstances in a broad sense. Those are the sorts of things that the Supreme Court recognized are not for the legislature to be understanding in a broad sense. They are not things that are appropriate for the general assembly to try to legislate in a global way or a global  In the case of the Scott Lee Memorial Hospital, cases that involved  damages and so very clearly involved efforts by the legislature to dictate the damages the jury could award. It found that those were inappropriate encroachments on the sphere of judicial authority. Because the legislature isn't situated to make broad decisions and broad pronouncements like that. They are case-by-case determinations, cases in which a jury may be asked to determine whether a plaintiff has had to take out a high-interest loan in order to pay debts that are necessary. Under a different regime, I don't know. I imagine there would be serious evidentiary concerns. I imagine a lot of defendants would be fighting against that. Given the circumstances of a particular case, an individual case, that is something that a decision a trial judge ought to be making. It isn't a decision that the General Assembly ought to be making. Maybe it isn't a question for the jury, but maybe it's a question for the courts. This might be unfair, but we have a separate provision that allows for a liquidated sum, a certain amount of money that can be determined to be a debt going back in time. That is an appropriate assessment. It takes an injury and reduces it to a dollar. It takes an injury that is not already a dollar amount. It is a broken leg, a late diagnosis of cancer, and reduces it to an amount. But it's not a debt that has been owing during that period of time. Commercial cases are different. It may be something that translates easily to an amount of money, but it's a liquidated sum. It's not a debt  back in  It's an injury that is  amount. It's a broken leg, a    it to an amount. It's an injury that has been owed during that period of time. It's a liquidated sum. It's a broken leg, a  of cancer, and reduces    a broken       been owed during that period of time. It's a broken leg, a late diagnosis of cancer, but it's an injury that has been sustained to be addressing, and this is not just a criticism of the General Assembly or the legislature. It's something that is written into the Constitution as part of the separation of powers, and that's why it's set forth as a constitutional concern. The notion that the prejudgment interest in an issue here incentivizes settlement is a particularly chilling way of putting it, and I use the word chilling in more than one sense. It's chilling in the sense, call it an Orwellian sense. It's also chilling, though, in the sense of the effect that it has on defendants' exercise of its rights. Defendants are just curious, this is a defense strategy. Do defendants benefit from delay? Case-by-case determination, Your Honor. There may be situations where that is the case, and there may be others where it's not. Doesn't delay always work against the party with the burden of proof? I don't think one can rule that time tends to help the party who doesn't have the burden of proof. Another concern that the General Assembly may have is, if you look at the interim court, there's significant delay that varies from circuit to circuit around the state in terms of the number of months to get a judgment. And we know that certain case types overwhelmingly contribute in terms of the bulk of cases in the law, regardless of what county you're in or what circuit you're in. Is that something the General Assembly could have considered? Look at the court system and say, gosh, is it really fair that plaintiffs in DuPage County have to wait 25 months before their case to get a jury verdict, whereas in Lake County it's 31 months. Isn't that something the General Assembly could legitimately be concerned about? How quickly dovetailing with the provision of the Constitution that the Justice of the Lord and the  Court   with? Is that something the General Assembly could have considered? I think the case load and the time to verdict from one circuit court to another, and your Honor probably has a better sense of what those statistics are than I do, but to the extent that they differ, those are concerns that are certainly something that the General Assembly can consider and even address in certain ways. Whether that is an issue that is addressed by prejudgment interests is an open question, but even if it is, the question is, why should a societal wrong or harm or a problem that needs to be addressed doesn't authorize the General Assembly to interfere with fundamental rights. In this case, or in the case of prejudgment interests, to put a price on the right to a jury judgment is not an open question, but it is an open question, and it is an open question that the General Assembly can address and address in a way that is